The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BEL POWER SOLUTIONS INC.,

                    Plaintiff,

      v.

MONOLITHIC POWER SYSTEMS, INC.,

                    Defendant.

No. 2:23-mc-00008-JCC

NON-PARTY MICROSOFT
CORPORATION'S OPPOSITION
TO BEL POWER'S MOTION TO
COMPEL

*Note on Motion Calendar:*
**February 17, 2023**

## I.      INTRODUCTION

The Court should deny plaintiff Bel Power Solutions Inc.'s motion to compel filed against non-party Microsoft Corporation, because Rule 45 does not enable Bel Power to force a non-party to conduct a burdensome search based solely on an unsupported contention that particular information might theoretically exist.  This is especially true when the information Bel Power seeks does not appear to be relevant to its claims.  The sole evidence Bel Power cites—a single webpage—does not show that Microsoft uses the products relevant to Bel Power's lawsuit.  Furthermore, the legal authority Bel Power relies on for its relevance arguments says the opposite—that the information it requests is available through party discovery or irrelevant. This Court should therefore deny the Motion as an improper fishing expedition that imposes an undue burden and exceeds the scope of permissible non-party discovery.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## II.    FACTUAL BACKGROUND

Bel Power sued Monolithic Power Systems, Inc. ("MPS") for patent infringement in the Western District of Texas.  Microsoft is not a party to that case.  On November 14, 2022, Bel Power served a Rule 45 subpoena on Microsoft seeking documents and testimony regarding *any* Microsoft product that "incorporates" an open-ended list of chips manufactured by Defendant MPS.  *See* Dkt. 2 Ex. E, at 11-12.

Microsoft is no stranger to third-party subpoenas seeking information about its products.  In 2022 alone, it received and responded to at least 300 such subpoenas.  Gogerty Decl. ¶ 3.  Many of those subpoenas relate to Microsoft products that are prior art relevant in the underlying litigation, but some have other relevance.  After receiving the subpoena from Bel Power, Microsoft counsel spoke with Bel Power counsel and pointed out that the Subpoena did not identify any Microsoft products by name or explain how they were relevant.  *See* Byer Decl. ¶ 2.  Bel Power counsel responded that some unspecified Microsoft products were accused of indirectly infringing Bel Power patents in the Texas case, where the defendant MPS is accused of being a direct infringer who induced Microsoft's activities.  *Id.*  To understand how Microsoft products were allegedly relevant, Microsoft requested a copy of Bel Power's infringement contentions.  *Id.*  Microsoft repeated its request for those infringement contentions in a November 30 email, its formal objections on December 2, and another email on December 22.  *See id.* Ex. 1, at 8, 10; Dkt. 2 Ex. F, at 3-8.

On January 4, 2023, Bel Power provided its Final Infringement Contentions dated July 15, 2022.  Byer Decl. Ex.4.  These contentions show that Bel Power accuses MPS of infringing patents related to a handful of power control microchips that MPS makes and sells for use in electronic products, such as computers.  *See* Mot. at 1-2.  Bel Power's infringement contentions accuse less than three percent of all MPS products of infringement, representing just tens-of-thousands of dollars in potential damages in that litigation.  *See* Dkt. 2 Ex. C, at 3-4.  The contentions, however, do not mention Microsoft or any of its products.  *See* Byer Decl. Ex. 4.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

After Microsoft pointed out this deficiency, Bel Power provided a webpage and claimed that it shows that "certain MPS Accused Products are incorporated into Microsoft products." *Id.* Ex. 1, at 7-8.  Yet the webpage listed MPS chip model numbers that Bel Power's Final Infringement Contentions ***did not accuse***.  *Id.* Ex. 3.  When Microsoft pointed that out, Bel Power argued that it had "the right to identify additional MPS products as discovery progressed," and argued it was permitted to take discovery outside of its already "final" infringement contentions.  *Id.* Ex.1, at 3.  It provided no evidence suggesting Microsoft ever used any of the chips listed in its infringement contentions.

On January 25, two days before filing its Motion, Bel Power abandoned that argument and narrowed its request to MPS chips actually identified in its contentions, but still provided no basis to believe Microsoft used any of those chips.  *See* Byer Decl. Ex. 2, at 6-8.  Microsoft again requested that Bel Power provide any evidence that Microsoft was reasonably likely to have used the accused chips.  Bel Power never did.  *See id.* at 5.

On January 27, Bel Power reformulated its request to cover all Microsoft products that include any MPS chips having one of three prefixes and stated for the first time that Microsoft's search should include but not be limited to "Microsoft Surface, Xbox and Azure."  *Id.* at 4.  Bel Power had never before identified Microsoft Surface or Azure in communications with Microsoft, and those products do not appear in its Final Infringement Contentions.  Again, Microsoft requested that Bel Power identify the basis of any belief those brands involved use of the accused MPS chips.  *Id.* at 3-4.  One hour after sending its newly formulated request—and without explaining its new identification of Surface and Azure—Bel Power filed this motion to compel ("Motion").

Discovery in the Texas litigation closed on January 27, 2023.

## III.    LEGAL FRAMEWORK

"Although the discovery rules are admittedly broad, they do not condone 'fishing expeditions.'" *Emara v. Multicare Health Sys.*, No. 3:11-CV-6055, 2012 WL 5205950, at *3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

(W.D. Wash. Oct. 22, 2012).  Accordingly, a party may not impose burdensome discovery on a third-party without providing at least some basis to believe the requested materials actually exist. *Id.* (granting motion to quash Rule 45 subpoena because Plaintiff "fail[ed] to establish any basis for concluding that the requested employment records will contain any [relevant] evidence"); *MP Nexlevel, of Cal., Inc. v. CVIN, LLC*, No. 1:14-CV-00288, 2016 WL 1408459, at \*4 (E.D. Cal. Apr. 11, 2016) (denying motion to compel and recognizing that while the "Court understands Defendant's argument that it requires the requested discovery to determine that issue …. Without such evidence, it appears that discovery …, even if the result could in theory be legally relevant, is akin to a 'fishing expedition,' in that Defendant is searching for something improper that might give right to a potential defense, rather than following a lead indicating that such impropriety will be found.").

Even when evidence does show relevant material is reasonably likely to exist, a party has an obligation to seek discovery from sources other than a third-party before resorting to a Rule 45 subpoena.  *See Fernandez-Medina v. Olivarez*, No. 3:20-CV-05703, 2022 WL 4120167, at \*1 (W.D. Wash. Sept. 9, 2022) ("[A] subpoena should be supported by clear identification of the documents sought and a showing that the records are obtainable only through the identified third party."); *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982). ("Nonparty witnesses are powerless to control the scope of litigation an    d discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party.").

Under no circumstances does Rule 45 allow for interrogatories to third-parties.  *See Turner v. Ralkey*, No. 3:20-CV-5472, 2021 WL 135855, at \*3 (W.D. Wash. Jan. 13, 2021) ("Defendants are correct that a Rule 45 subpoena cannot be used to require third parties to respond to interrogatories.").  This prohibition also prevents a party issuing a subpoena from propounding an interrogatory disguised as a request for production.  *See Duong v. Groundhog Enters., Inc.*, No. 2:19-CV-01333, 2020 WL 2041939, at \*8 (C.D. Cal. Feb. 28, 2020) ("The

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Court agrees … that this request is a disguised interrogatory that is not the proper subject of a Rule 45 subpoena and may not be directed to a nonparty."); *Dockery v. Heretick*, No. CV 17-4114, 2021 WL 268497, at *9 (E.D. Pa. Jan. 27, 2021) (denying motion to compel and recognizing that "Plaintiff's request is inaccurately characterized as a document request.  Indeed, it is an interrogatory 'masquerading' as a document request.").  Each of Bel Power's requests fail to satisfy these basic restrictions.

## IV.    ANALYSIS

Bel Power bases its Motion on two misstatements.  The first is Bel Power's claim that "[t]he court in the Texas Litigation has instructed Bel Power to seek" the requested information from third-parties.  Dkt. 2 ¶ 6.  In support, Bel Power relies on a July 26, 2022, order in the Texas Litigation ("July Order") denying its motion to compel.  Bel Power's motion quotes—several times—the statement that Bel Power "*may* seek discovery from *these* third parties who import *these* products." *Id.* (emphasis added).  But Bel Power fails to quote the surrounding text identifying "these third parties" and "these products."  The relevant portion of the July Order provides:

> MPS may achieve a "design win" with a third-party OEM that manufactures the product in Asia, and the third-party OEM then sells the foreign manufactured product overseas to a third-party customer.  Then, that third-party customer may import the product into the United States.  This act of importation may give rise to damages.  Plaintiff may seek discovery from these third parties who import these products.

Dkt. 2 Ex. C, at 5 (citation omitted).  "These third parties" refers to third-party customers who import into the United States a product purchased from a third-party OEM overseas manufacturer.  And "these products" refers to foreign-manufactured products that MPS allegedly induced the third-party OEM to manufacture using an accused MPS chip.

Bel Power's Motion provides no explanation as to how the July Order—the sole order on which the Motion relies—applies to Microsoft and fails to tailor the relief this Motion seeks to the scope of that order.  Namely, none of the requested discovery is tailored to Microsoft purchasing products form an overseas third-party OEM and then importing those products into

NON-PARTY MICROSOFT'S OPPOSITION TO BEL POWER'S MOTION TO COMPEL
No. 2:23-mc-00008-JCC - 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

the United States.  Instead, Bel Power appears to claim MPS induced Microsoft—as opposed to a third-party overseas OEM—to incorporate accused MPS products into unidentified Microsoft products.  Bel Power requests this Court to order discovery—regardless of importation status—with respect to all MPS chips purchased by Microsoft.  Dkt. 1-1 at 2.  Bel Power also seeks discovery into products Microsoft sold domestically or imported.  *Id.*  The Texas Court did not open these discovery floodgates; its order was narrowly limited to discovery on importation of foreign-manufactured products containing accused MPS chips.

Bel Power also bases its motion on the factual misstatement that "[t]he Xbox Series X is a prime example of a Microsoft product *that incorporates the MPS products at issue*."  Mot. at 9 (emphasis added).  Bel Power's own evidence demonstrates this is false, stating that the Xbox "features the MP2161, MP2926, MP86912C, MP86965, and MP2855" microchips.  Byer Decl. Ex. 3.  Neither Bel Power's infringement contentions, nor its subpoena to Microsoft, nor the proposed order identify any of those five MPS chips as the "MPS products at issue."  In short, Bel Power's only evidence to support its position that the Xbox Series X "incorporated the MPS products at issues" instead shows that the Xbox Series X uses chips *not at issue*.  Bel Power has provided zero evidence suggesting that any Microsoft product incorporates one of the few MPS chips relevant to the Texas Litigation.

Microsoft has repeatedly requested an explanation for why the subpoena represents anything but fishing for the hypothetical three percent chance a Microsoft product uses one of the relevant MPS chips.  Bel Power has provided nothing.  Against this backdrop, Bel Power now seeks to compel production of three categories of documents and a 30(b)(6) deposition. Each request should be denied.

### A.    Request 1(a): "the quantity of MPS products that Microsoft purchased since June 23, 2015, including the price paid for each product purchased."

This request fails because Bel Power has either already received this information from MPS, or the information has been ruled irrelevant.  The July Order states that "MPS has provided domestic sales data" to Bel Power.  Dkt. 2, Ex C, at 5.  Bel Power provides no evidence or

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

explanation as to why this production would not cover everything this request seeks from Microsoft.

This request also fails because it exceeds the scope of relevant discovery. Bel Power cites only the July Order in arguing the Court allowed third party discovery at this late stage. But the July Order found that the bulk of foreign activities related to the accused chips are irrelevant:

> Bel Power has not yet made a sufficient showing that it would be entitled to any damages based on MPS's foreign sales, so MPS need not produce its foreign sales data. Even if MPS worked with an OEM to include an accused MPS part as part of the OEM's foreign product, the Court is not convinced that this gives Bel Power a right to damages based on a foreign sale of that foreign product. Such a "design win" is not a sale or offer for sale that gives rise to damages."

*See id.* And later the Texas Court denied Bel Power's request that it broaden the scope of third party discovery. *See* Byer Decl. Ex. 5, at 11 (denying Bel Power's request that the Texas Court "find that all direct or indirect sales of the Accused Products to U.S. end customers are relevant to Bel's induced infringement claims"). Furthermore, the July Order did not "instruct" Bel Power to seek the discovery it now requests. Instead, the July Order *denied* Bel Power's motion to compel and suggested the only permissible third-party discovery would be the volume of products a third-party customer purchased from an overseas OEM and imported into the United States. Dkt. 2 Ex. C., at 5. Bel Power's request 1(a) does not fall within that scope—instead it seeks the quantity of MPS products *purchased* (as opposed to *imported*) with no restrictions in line with what the Texas Court described. This request should therefore be denied as both seeking information available through party discovery, *see Fernandez-Medina*, 2022 WL 4120167, at *1, and an improper attempt to circumvent the Texas Court's orders defining the scope of relevant discovery.

NON-PARTY MICROSOFT'S OPPOSITION TO BEL POWER'S MOTION TO COMPEL
No. 2:23-mc-00008-JCC - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**B.      Request 1(b): "an identification of the Microsoft products that incorporate the MPS products purchased by Microsoft since June 23, 2015."**

Bel Power has provided zero basis supporting its speculation that Microsoft products might incorporate any accused chips, and made no showing this information is unavailable from other sources.  Bel Power states that "publicly available information" indicates that Microsoft is an end customer using MPS chips, but Bel Power has produced no such information that suggests Microsoft is a customer for one of the few chips actually at issue.  The heart of Bel Power's position appears to be that MPS induced Microsoft to include particular chips in particular Microsoft products.  *See* Mot. at 2.  That position, though, implies that MPS would inherently have evidence showing what it allegedly induced Microsoft to do.  Likewise, the results would speak for themselves—Bel Power could simply look inside a Microsoft product to determine whether it included a relevant chip.  Bel Power provides no explanation—much less evidence establishing or even supporting—why either of these sources would be insufficient.  For example, Bel Power never even claims to have looked at a single Microsoft product to determine whether it was relevant, preferring Microsoft to subsidize its lawsuit.  *Columbia Broad. Sys.*, 666 F.2d at 371 ("Nonparty witnesses … should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party.").

Bel Power now claims that it is "aware"[1] of three Microsoft brands: Xbox, Surface, and Azure.  But when asked to identify any basis for its contention those brands involve products using relevant MPS chip, Bel Power again provided neither explanation nor evidence.  Indeed, the only evidence Bel Power has provided relates solely to Xbox and shows that the gaming console does not, in fact, contain a relevant chip.  *See* Byer Decl. Ex. 3.  Bel Power provides absolutely no evidence or explanation addressing Surface or Azure.  Rather than conduct any discovery to identify relevant products, Bel Power has simply identified major Microsoft brands that might relate to hardware and seeks to shift the burden of discovery on a non-party.

---

[1] Bel Power carefully avoided identifying exactly of what it is "aware" with respect to these Microsoft brands.  *See* Byer Decl. Ex. 2, at 4 ("Bel Power can advise that it is aware of the following families of Microsoft products that should facilitate Microsoft's search: Microsoft Surface, xBox [sic] and Azure.").

NON-PARTY MICROSOFT'S OPPOSITION TO BEL POWER'S MOTION TO COMPEL
No. 2:23-mc-00008-JCC - 8

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Microsoft offers numerous and varied products and services under these brands. For example, a simple internet search would have shown that Microsoft has released at least twenty-nine Surface tablets.[2] Bel Power has not identified the Surface product in which it contends MPS induced Microsoft to include a relevant chip. Similarly, Bel Power has also not identified a time period in which it believes Microsoft products might have incorporated relevant chips—instead Bel Power seeks discovery of everything within its alleged eight-year damages period, regardless of relevance.

Bel Power's reference to Azure makes even less sense. Azure is not a single product, but a cloud computing platform that includes "more than 200 products and cloud services."[3] A simple internet search would have shown that Microsoft Azure offers compute, mobile, storage, communications, data management, messaging, media, and developer and management services, a global content delivery network, a blockchain work bench, and a ground station service to help customers move satellite data to the cloud and provide global connectivity.[4] Identifying "Azure" fails to identify any actual product that might contain an accused chip, much less one Microsoft purchases from an overseas OEM and imports into the United States. Bel Power presumably speculates that some hardware within the Azure infrastructure uses MPS chips, but Microsoft has no way to guess what Bel Power has in mind. For example, Bel Power does not state whether it believes those chips are found in servers, firewalls, routers, communications equipment, computer workstations, or somewhere else. Nor has Bel Power identified any basis to believe Microsoft designs those devices under MPS's influence (as opposed to acquiring them from a third-party) or imports them into the United States.[5] As with Xbox and Surface, Bel Power

---

[2] *See, e.g.*, Microsoft Surface, Wikipedia, https://en.wikipedia.org/wiki/Microsoft_Surface (last visited Feb. 10, 2023).

[3] *See, e.g.*, *What is Azure?*, Microsoft Corp., https://azure.microsoft.com/en-us/resources/cloud-computing-dictionary/what-is-azure/ (last visited Feb. 10, 2023).

[4] *See, e.g.*, Microsoft Azure, Wikipedia, https://en.wikipedia.org/wiki/Microsoft_Azure (last visited Feb. 10, 2023).

[5] On February 3, 2023, Bel Power purported to narrow its request to "FPGA cards associated with" Azure. Byer Decl. Ex. 2, at 2. This does nothing to change the substance of the request. Bel Power still fails to identify which products might contain a relevant chip, or a basis to believe one of them did. On February 7, Bel Power offered to "narrow" its request to twenty-eight Xbox and Surface products plus an undefined search of all Azure products, but

NON-PARTY MICROSOFT'S OPPOSITION TO BEL POWER'S MOTION TO COMPEL
No. 2:23-mc-00008-JCC - 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

provides nothing suggesting that a blind search across an entire division of Microsoft would yield anything but frustration and needless expense, much less something the Texas Court stated was the subject of proper discovery.

In an attempt to resolve this Motion, Microsoft explained to Bel Power that it needs more than an unsubstantiated claim that somewhere, between three business lines, relevant information might theoretically exist. *See* Byer Decl. ¶ 2. Microsoft needs this because it does not have a centralized records store in which it can search to identify products across all products lines that include particular MPS chips. *See* Gogerty Decl. ¶ 4. It does not organize its business records in this way. As a result, it must conduct a burdensome search within individual engineering groups, which are typically organized based on product and time period. *Id.* For each product, Microsoft typically has a combination of technical documents that it might be able to use to determine whether that product has a relevant MPS chip. For Surface and Xbox products, this often includes a bill of materials ("BOM"). These products frequently have a top-level BOM that identifies the various more granular BOMs that each describe the subparts of a particular portion of product. *Id.* If an MPS chip is used, those more granular BOMs might reflect that use. *Id.* at ¶ 5. But locating and navigating through multiple layers of BOMs is a burdensome and manual process that requires individual input from the relevant engineers, and would typically need to be done on a product-by-product basis to identify the chips that each product uses. *Id.* Conversely, Bel Power has provided no explanation as to why it could not simply look within the widely available products themselves to conduct its own investigation, before asking Microsoft to search across all products imported or sold by all divisions of the company over the past eight years.

And when asked why Bel Power speculates that this burdensome search would yield relevant information, Bel Power claimed that confidentiality issues prevented it from sharing

---

still failed to offer any basis for Bel Power's speculation that any of these products use an accused chip. *Id.* at 1. This string of post-motion offers simply demonstrates that Bel Power does not know what it is seeking and never allowed meaningful opportunity to meet and confer.

NON-PARTY MICROSOFT'S OPPOSITION TO BEL POWER'S MOTION TO COMPEL
No. 2:23-mc-00008-JCC - 10

more—an excuse that makes no sense.  Byer Decl. ¶ 2.  Bel Power articulates no logical reason why Microsoft should be prevented from reviewing information (if it existed) about Microsoft's own products.  *Id.*  Not surprisingly, Bel Power makes no showing of having asked MPS for permission to share any purportedly confidential information with Microsoft, much less that Bel Power sought relief from the Texas Court if that permission were unreasonably withheld.

Bel Power compounds the problem by not limiting its request in any meaningful way.  It states that although it is "aware of" Surface, Xbox and Azure, "this information should not be construed as a limit on Microsoft's search and production."  Byer Decl. Ex. 2, at 4.  In other words, Bel Power requests that Microsoft be compelled to run a company-wide search for any product that incorporates an MPS product, based on a single article that shows that Xbox, in fact, does not use any relevant MPS products, much less that Microsoft purchased it from an overseas third-party OEM and imports it into the United States.  *Id.* Ex. 3.  All other products would, of course, be irrelevant and accounted for by party discovery.  *See* Dkt. 2 Ex. C, at 5.  Bel Power's request 1(b) is therefore not only overly broad and unduly burdensome, but an impermissible fishing expedition that violates Rule 45.  *See Emara*, 2012 WL 5205950, at *3; *MP Nexlevel*, 2016 WL 1408459, at *4.

This request should also be denied as an improper attempt to impose an interrogatory on a non-party.  *See Turner*, 2021 WL 135855, at *2; *Duong*, 2020 WL 2041939, at *8; *Dockery*, 2021 WL 268497, at *9.  Bel Power's 1(b) is equivalent to asking Microsoft to "Identify all Microsoft products that incorporate the MPS products purchased by Microsoft since June 23, 2015."  Inserting the phrase "documents sufficient to show" before this interrogatory does not transform it into a request for production.  *Dockery*, 2021 WL 268497 at *9 (denying motion to compel response to "an interrogatory 'masquerading' as a document request").

### C.  Request 1(c): "the number of Microsoft products identified in (b) that were sold and/or imported into the United States since June 23, 2015."

This request is overly broad because it far exceeds the July Order permitting non-party discovery into products imported into the United States after purchase from an overseas OEM.

NON-PARTY MICROSOFT'S OPPOSITION TO BEL POWER'S MOTION TO COMPEL
No. 2:23-mc-00008-JCC - 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

As discussed above, Bel Power has made no showing that Microsoft fits within this fact pattern. And on its face, the request seeks domestic sales information (in addition to importation), which the Texas Court found existing discovery already covers.  Dkt. 2 Ex. C, at 5.

This request also fails to sufficiently identify the relevant Microsoft products, but instead incorporates the defects of request 1(b) by presuming Microsoft will somehow be identifying products in response to "an interrogatory 'masquerading' as a document request." *Dockery*, 2021 WL 268497 at \*9.  Microsoft does not have documents that show the number of products sold or imported based on whether those products included particular MPS chips. *See* Gogerty Decl. ¶ 6.  As a result, determining which documents Bel Power contends would be "sufficient to show" would require conducting the improper and interrogatory-like investigation Bel Power seeks through request 1(b).  Thus, request 1(c) inherits all the defects of request 1(b), as well as the additional problem of overbreadth.

### D.    Deposition Topics

The rules provide neither a mechanism for written objections to deposition topics, nor an obligation to do so. *See Dick Corp. v. SNC-Lavalin Constructors, Inc.*, No. C06-715, 2006 WL 8454968, at \*3 (W.D. Wash. Oct. 2, 2006) (rule governing objections "does not apply to subpoenas for a deposition"); 9 MOORE'S FEDERAL PRACTICE - CIVIL § 45.41[1][c] (2022) ("By its own terms, this rule applies only to subpoenas seeking production or inspection, and therefore does not apply to a subpoena ad testificandum.").  Microsoft therefore stated that it was willing to meet and confer with Bel Power to understand the scope of its deposition topics, and why it contended such testimony was relevant or necessary. *See* Dkt. 2 Ex. F, at 1.  Bel Power did not raise the issue of depositions until February 1, after it had filed its Motion. *See* Byer Decl. ¶ 2. If Microsoft identifies relevant information to produce, it remains willing to meet and confer with Bel Power to set the proper scope of any appropriate deposition.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## V.    CONCLUSION

For the reasons stated above, Microsoft respectfully requests the Court deny Bel Power's Motion.

DATED this 13th day of February, 2023.

Davis Wright Tremaine LLP
Attorneys for Microsoft Corporation

By */s/ Benjamin J. Byer*
Benjamin J. Byer, WSBA #38206
Daniel A. Fiedler, WSBA #56436
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: 206-622-3150
Fax: 206-757-7700
Email: benbyer@dwt.com
Email: danielfiedler@dwt.com

I certify that this memorandum contains 4,197 words, in compliance with the Local Civil Rules.

NON-PARTY MICROSOFT'S OPPOSITION TO BEL POWER'S MOTION TO COMPEL
No. 2:23-mc-00008-JCC - 13